# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

In re:

The Diocese of New Ulm,

            Debtor.

Case No.: 17-30601

Chapter 11 Case

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

# TABLE OF CONTENTS

ARTICLE I        DEFINITIONS..................................................................................2
    1.1    Defined Terms ........................................................................... 2
    1.2    Interpretation............................................................................ 12
    1.3    Time Periods ............................................................................ 13
    1.4    Exhibits .................................................................................... 13

ARTICLE II        CLASSIFICATION OF CLAIMS AND INTERESTS ....................13

ARTICLE III        TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS.........14
    3.1    Allowed Administrative Expense Claims.............................. 14
    3.2    Statutory Fees and Court Costs............................................. 14
    3.3    Unsecured Priority Claims .................................................... 15

ARTICLE IV        TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS....................16
    4.1    Class 1 – Known Survivor Claims......................................... 16
    4.2    Class 2 – Unknown Survivor Claims and Late-Filed Survivor Claims................ 17
    4.3    Class 3 – General Unsecured Claims..................................... 18
    4.4    Class 4 – Parish Claims......................................................... 19
    4.5    Special Provisions Relating to Creditors' Rights of Setoff ................. 19

ARTICLE V        MEANS OF EXECUTION OF THE PLAN .................................19
    5.1    Trust Funding.......................................................................... 19
    5.2    Post-Effective Date Unknown Claim Reserve....................... 20
    5.3    Pre-Effective Date Unknown Claim Reserve ........................ 20
    5.4    Late-Filed Claim Reserve ...................................................... 20
    5.5    Vesting .................................................................................... 21

ARTICLE VI        TRUST .................................................................................21
    6.1    Establishment of Trust ........................................................... 21
    6.2    Tax Matters ............................................................................. 21
    6.3    Appointment of the Trustee ................................................... 22
    6.4    Rights and Responsibilities of Trustee .................................. 22
    6.5    Investment Powers; Permitted Cash Expenditures ............... 22
    6.6    Registry of Beneficial Interests............................................. 22
    6.7    Non-Transferability of Interests............................................. 22
    6.8    Termination ............................................................................. 23
    6.9    Immunity; Liability; Indemnification .................................... 23

ARTICLE VII        SURVIVOR CLAIMS ............................................................24
    7.1    Assessment.............................................................................. 24
    7.2    Dismissal of Pending Litigation............................................. 25
    7.3    Release .................................................................................... 25
    7.4    Objections Deemed Withdrawn.............................................. 25
    7.5    Objections and Litigation after the Effective Date ................ 25
    7.6    Claim Withdrawal................................................................... 25
    7.7    Distributions to Survivor Claimants ...................................... 25

7.8      Survivor Claims Reviewer ................................................................. 26
7.9      Medicare Procedures ......................................................................... 26
7.10   Medicare Claims Indemnity .............................................................. 26

ARTICLE VIII   SETTLING INSURERS ........................................................27
8.1      Insurance Settlement Agreements ...................................................... 27
8.2      Sale Free and Clear of Interests of Settling Insurer Policies .............. 27
8.3      Resolution of Claims Involving Settling Insurers................................ 27
8.4      The Settling Insurers' Payments ......................................................... 28
8.5      Judgment Reduction........................................................................... 28
8.6      Further Assurances; Non-Material Modifications ............................... 28
8.7      Indemnification Obligations ............................................................... 29
8.8      Timing ............................................................................................... 30

ARTICLE IX     ESTIMATIONS/ASSESSMENTS ......................................30
9.1      Estimations/Assessments are Not Binding ........................................ 30

ARTICLE X      DISTRIBUTIONS AND CLAIMS ADMINISTRATION FOR CLAIMS
                OTHER THAN SURVIVOR CLAIMS ...........................................30
10.1   Distributions...................................................................................... 30
10.2   Method of Payment........................................................................... 30
10.3   Reservation of Rights to Object to Claims ......................................... 31
10.4   Filing of Objections .......................................................................... 31
10.5   Procedures for Treating and Resolving Disputed Claims..................... 31
10.6   Record Date ...................................................................................... 32
10.7   De Minimis Distributions ................................................................... 32
10.8   Unclaimed Payments ......................................................................... 32
10.9   Time Bar to Check Payments ............................................................ 32
10.10 Setoffs .......... …………………………………………………………33

ARTICLE XI     EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................33
11.1   Assumption or Rejection of Executory Contracts and Unexpired Leases............ 33
11.2   Cure of Defaults................................................................................ 33
11.3   Bar Dates for Rejection Damage Claims ............................................ 33

ARTICLE XII    EFFECTIVENESS OF THE PLAN ....................................33
12.1   Conditions Precedent to the Effective Date ........................................ 33
12.2   Notice of Effective Date .................................................................... 34
12.3   Effect of Non-Occurrence of Conditions............................................ 34

ARTICLE XIII   EFFECTS OF CONFIRMATION .......................................34
13.1   Discharge .......................................................................................... 34
13.2   Title to and Vesting of Assets ............................................................ 35
13.3   Corporate Action............................................................................... 35
13.4   Identity of Officers of Reorganized Debtor ........................................ 35
13.5   Exculpation and Limitation of Liability .............................................. 35
13.6   Limitation of Liability........................................................................ 36

13.7    Channeling Injunction Preventing Prosecution of Channeled Claims
Against Protected Parties and Settling Insurers ................................... 36
13.8    Supplemental Settling Insurer Injunction ................................................ 37
13.9    Protected Parties' Waiver and Consent .................................................... 38
13.10   Debtor Waiver and Release of Claims ..................................................... 38
13.11   Injunctions in Full Force and Effect ........................................................ 39
13.12   Injunctions Integral .................................................................................. 39
13.13   No Bar on Certain Claims ........................................................................ 39
13.14   Defense and Indemnity for Covered Non-Survivor Claims ..................... 39
13.15   Effectuating Documents; Further Transactions; Exemption from Certain
Transfer Taxes ......................................................................................... 40
13.16   Cancellation of Instruments ..................................................................... 40
13.17   Dissolution of the Committee ................................................................... 40

ARTICLE XIV    RETENTION OF JURISDICTION ..............................................40
14.1    By the Bankruptcy Court .......................................................................... 40
14.2    By the District Court ................................................................................. 42
14.3    Actions to Collect Amounts Owed Pursuant to the Plan ......................... 42
14.4    Case Closure ............................................................................................. 42

ARTICLE XV    INCORPORATION OF CHILD PROTECTION PROTOCOLS ...................42
15.1    Child Protection Protocols ....................................................................... 42

ARTICLE XVI    MISCELLANEOUS PROVISIONS ...............................................43
16.1    Modification of the Plan ........................................................................... 43
16.2    U.S. Trustee Reports ................................................................................. 43
16.3    Severability of Plan Provisions ................................................................ 43
16.4    Regulated Rates ........................................................................................ 43
16.5    Successors and Assigns ............................................................................ 43
16.6    Governing Law .......................................................................................... 43
16.7    Construction .............................................................................................. 44
16.8    Revocation ................................................................................................ 44
16.9    Controlling Documents ............................................................................. 44
16.10   Notices ...................................................................................................... 44
16.11   Filing of Additional Documents ............................................................... 45
16.12   Direction to a Party .................................................................................. 45
16.13   Certain Actions ......................................................................................... 45
16.14   Plan as Settlement Communication .......................................................... 45
16.15   Other Rights .............................................................................................. 46

ARTICLE XVII    BANKRUPTCY RULE 9019 REQUEST .......................................46

ARTICLE XVIII CONFIRMATION REQUEST .........................................................46

## INTRODUCTION

The Official Committee of Unsecured Creditors and the Diocese of New Ulm, the debtor and debtor in possession in the above-captioned Chapter 11 case, propose this Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of the Bankruptcy Code.

All creditors are encouraged to consult the Disclosure Statement, as defined below, before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions of the Diocese of New Ulm, events prior to and during this Chapter 11 Case, and a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

# ARTICLE I
# DEFINITIONS

## 1.1    Defined Terms

For the purposes of the Plan, except as expressly provided, all capitalized terms not otherwise defined herein have the meanings ascribed to them below:

(1)    "Abuse" means any (i) actual or alleged act of sexual conduct, misconduct, abuse, or molestation; including any actual or alleged "Sexual Abuse" as that phrase is defined in the Minnesota Statutes Section 541.071(1) or any other sexually related act, contact, or interaction; indecent assault and/or battery; rape; lascivious behavior; undue familiarity; pedophilia; or ephebophilia; (ii) act that causes or allegedly causes sexually-related physical, psychological, or emotional harm, or any other contacts or interactions of a sexual nature, including any such contacts or interactions between a child and an adult, or a non-consenting adult and another adult; (iii) assault; battery; corporal punishment; or any other act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation. Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the person.

(2)    "Administrative Expense" means an unpaid administrative expense of the kind described in Bankruptcy Code Sections 503(b) and 507(a)(2) against the Diocese, including, without limitation, (i) the actual, necessary costs and expenses of preserving the estate of the Diocese, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, (ii) compensation and reimbursement of expenses of professionals to the extent allowable under Bankruptcy Code Sections 327, 328, 330(a), 331, 503(b), and/or 1103 and actually Allowed pursuant to a Non-Appealable Order of the Bankruptcy Court, and (iii) all fees and charges assessed against the estate under 28 U.S.C. §§ 1911–1930, including the fees, if any, due to the U.S. Trustee.

(3)    "Allowed" means with respect to any Claim: (i) a Claim that has been scheduled by the Diocese in its Schedules as other than disputed, contingent, or unliquidated and as to which the Diocese or any other party-in-interest have not filed an objection; (ii) a Claim that either is not a Disputed Claim or has been allowed by a Non-Appealable Order; (iii) a Claim that is determined by the Diocese to be allowed; (iv) a Claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (v) a Claim relating to a rejected executory contract or unexpired lease that is not a Disputed Claim or has been allowed by a Non-Appealable Order, only if a Proof of Claim has been timely filed; or (vi) a Claim as to which a Proof of Claim has been timely filed and as to which the Diocese or any party-in-interest has not filed an objection; and with respect to all Claims, only after reduction for applicable setoff and similar rights of the Diocese.

(4)    "Approval Order" means an order of the Bankruptcy Court approving one or more Insurance Settlement Agreements, including the Confirmation Order, if no other Approval Order is entered with respect to an Insurance Settlement Agreement.

(5)    "Archdiocese" means the Archdiocese of Saint Paul and Minneapolis.

(6)     "Assumed Agreement" means a contract, lease, or other agreement listed on Exhibit G.

(7)     "Avoidance Action" means any claim, cause of action, or rights to property of the Diocese or the bankruptcy estate under Bankruptcy Code Sections 544, 545, 547, 548, 549, 550, or 551.

(8)     "Ballot" means the form of ballot to be used to vote on this Plan.

(9)     "Bankruptcy Code" or "Code" means Title 11 of the United States Code.

(10)    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota, or such other court of competent jurisdiction which properly exercises jurisdiction over part or all of the Chapter 11 Case, to the extent that the reference of part or all of the Chapter 11 Case is withdrawn.

(11)    "Bankruptcy Rule" or "Rule" means a Federal Rule of Bankruptcy Procedure.

(12)    "Catholic Mutual" means Catholic Mutual Relief Society of America.

(13)    "Causes of Action" means, except as provided otherwise in the Plan, the Confirmation Order, or any document, instrument, release, or other agreement entered into in connection with the Plan, all Claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party Claims, counterclaims, and cross claims of the Diocese or its Estate, the UCC, or the Trust (as successor to the Diocese or its Estate), including an action that is or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any Person based on law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, any action brought pursuant to Bankruptcy Code Sections 522, 541–45, 547–51, and 553; provided, however, that any affirmative defense or cross-claim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent that it seeks to disallow or reduce, or is offset against, such Claim.

(14)    "Channeled Claim" means any Survivor Claim, Related Insurance Claim, Medicare Claim, Extra-Contractual Claim, or other Claim against any of the Protected Parties or the Settling Insurers to the extent such Claim arises from the same injury or damages asserted as a Survivor Claim against the Protected Parties or the Settling Insurers, that directly or indirectly arises out of, relates to, or is in connection with such Survivor Claim or other Claim covered by the Channeling Injunction or Supplemental Insurer Injunction; provided, however, that "Channeled Claims" shall not include any Claim against (i) an individual who perpetrated an act of Abuse that forms the basis of a Survivor Claim with respect to that Survivor Claim; or (ii) any religious order, diocese (other than the Diocese itself), or archdiocese (including the Archdiocese).

(15)    "Channeling Injunction" is the injunction contained in Plan Section 13.7.

(16)    "Chapter 11 Case" means the Diocese's pending case under the Bankruptcy Code, enumerated in the caption at the top of this Plan.

(17)    "Child Protection Protocols" means the document entitled "Child Protection Protocols" and the related "Appendix A" included as Exhibits J and J(1).

(18)    "Claim" has the meaning ascribed in 11 U.S.C. § 101(5).

(19)    "Claim Filing Deadline" means July 10, 2017.

(20)    "Class 1 Claim" means a Known Survivor Claim.

(21)    "Class 1 Claimant" means a holder of a Class 1 Claim.

(22)    "Class 2 Claim" means an Unknown or Late-Filed Survivor Claim.

(23)    "Class 2 Claimant" means a holder of a Class 2 Claim.

(24)    "Class 2 Reserves" means, collectively, the Pre-Effective Date Unknown Claim Reserve, the Post-Effective Date Unknown Claim Reserve, and the Late-Filed Claim Reserve.

(25)    "Conditional Payment" means any payment made to a Survivor Claimant under the MMSEA, including any payment by an MAO under the MSPA.

(26)    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

(27)    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129 which becomes a Non-Appealable Order.

(28)    "Covered Non-Survivor Claim" means any Claim, other than Survivor Claims, Related Insurance Claims, or Medicare Claims, for which the Diocese, a Parish, or an Other Insured Entity would otherwise have coverage under a Settling Insurer Policy but for the sale, transfer, or release by the Diocese, Parish or Other Insured Entity of such Settling Insurer Policy in connection with an Insurance Settlement Agreement.

(29)    "Creditor" means a holder of a Claim entitled to distributions under the Plan.

(30)    "Cure Amount Claim" means a Claim based upon the Diocese's monetary defaults under an executory contract or unexpired lease that is to be paid in connection with the assumption of such contract or lease under Bankruptcy Code Section 365 in the amount set forth on Exhibit G.

(31)    "Diocese" means the Diocese of New Ulm, the Debtor in the Chapter 11 Case.

(32)    "Disallowed Claim" means (i) a Claim, or any portion thereof, that has been disallowed by a Non-Appealable Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Non-Appealable Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with

the Bankruptcy Court pursuant to the Bankruptcy Code, Non-Appealable Order, or other applicable law.

(33)    "Discharge" shall mean the complete extinguishment of the Diocese's liability in respect to any Claim or debt as further described in Section 13.1.

(34)    "Disclosure Statement" means the Amended Disclosure Statement for this Plan, as may be further revised, modified, or amended.

(35)    "Disputed Claim" means: (i) a Claim that was scheduled by the Diocese in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (ii) a Claim that is not an Allowed Claim because the Diocese or other party in interest has objected to allowance of the claim under Bankruptcy Code Sections 502(b) or 503 and Bankruptcy Rule 3007; (iii) any secured or unsecured portions of a secured Claim that is the subject of a motion for determination of the value of security under Bankruptcy Code Section 506(a) and Bankruptcy Rule 3012; (iv) any Claim held by a Creditor against which the Diocese has demanded the recovery of property pursuant to Bankruptcy Code Section 502(d), without regard to whether such Claim was previously an Allowed Claim; (v) a Claim that is subject to final adjudication in a proceeding outside the Bankruptcy Court against one or more of the Diocese's insurers; or (vi) a Claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Non-Appealable Order.

(36)    "District Court" means the United States District Court for the District of Minnesota.

(37)    "Effective Date" means the day on which the conditions of Plan Section 12.1 have been satisfied.

(38)    "Employee Priority Claim" means a claim held by an employee that is entitled to priority under Bankruptcy Code Section 507(a)(4) or (5).

(39)    "Exculpated Parties" means collectively, (i) the Diocese, the Estate, and the UCC; (ii) the respective officers, directors, employees, members, attorneys, financial advisors, members of subcommittees of the board of directors, volunteers, and members of consultative bodies and councils including with respect to their service or participation in an outside board on which they serve at the request of the Diocese or the Bishop, in their capacity as such; (iii) the Settling Insurers with respect to their Settling Insurer Policies; and (iv) professionals of a Person identified in the preceding clause (i) through (iii).

(40)    "Extra-Contractual Claim" means any Claim against any of the Settling Insurers based, in whole or in part, on allegations that any of the Settling Insurers acted in bad faith or in breach of any express or implied duty, obligation, or covenant, contractual, statutory or otherwise before the Effective Date, including any Claim on account of alleged bad faith; failure to act in good faith; violation of any express or implied duty of good faith and fair dealing; violation of any unfair Claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other alleged act or omission of any of the Settling Insurers of any type for which the claimant seeks relief other than coverage or benefits under a Settling Insurer Policy. Extra-Contractual Claims include: (i) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Settling Insurers' handling of any Claim or any

request for coverage; (ii) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Settling Insurer Policies, or any contractual duties arising therefrom, including any contractual duty to defend any of the Protected Parties against any Claim, and (iii) any Claim that directly or indirectly, arises out of, relates to, or is in connection with the conduct of the Settling Insurers with respect to the negotiation of Insurance Settlement Agreements and the Plan.

(41)    "Filing Date" means March 3, 2017.

(42)    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

(43)    "General Unsecured Claim" means an unsecured Claim against the Diocese, but which is not an Administrative Expense, a Priority Tax Claim, an Employee Priority Claim, a Claim entitled to priority under Bankruptcy Coe Section 507(a), a Survivor Claim, or a Contingent Claim. A Claim related to bodily injuries or personal injuries that is not a Survivor Claim is a General Unsecured Claim.

(44)    "Insurance Coverage Adversary Proceeding" means the adversary proceeding commenced by the Diocese before the Bankruptcy Court on March 6, 2017, captioned as *The Diocese of New Ulm v. Continental Casualty Company, American Casualty Company of Reading, Pennsylvania, Lamorak Insurance Company, Catholic Mutual Relief Society of America, Maryland Casualty Company, and Fireman's Fund Insurance Company*, case no. 17-03028.

(45)    "Insurance Settlement Agreement" means a settlement agreement among the Diocese, the Parishes, and a Settling Insurer, which is listed on Exhibit I.

(46)    "Insurance Settlement Amount" means the funds payable by a Settling Insurer pursuant to an Insurance Settlement Agreement.

(47)    "Interest" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

(48)    "Known Survivor Claim" means a Survivor Claim for which a Proof of Claim was filed on or before the Claim Filing Deadline.

(49)    "Known Survivor Claimant" means the holder of a Known Survivor Claim.

(50)    "Late-Filed Survivor Claim" means a Survivor Claim that is neither a Known Survivor Claim nor an Unknown Survivor Claim.

(51)    "Late-Filed Survivor Claimant" means the holder of a Late-Filed Survivor Claim.

(52)    "Late-Filed Claim Reserve" means the reserve established by the Trust and jointly funded by the Trust and the Diocese pursuant to Section 5.4 of the Plan.

(53)    "MAO" means Medicare Advantage Organizations under parts C & D of the MMSEA.

(54)    "Medicare Claims" means any and all Claims relating to Survivor Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, including Claims for reimbursement of payments made to Survivor Claimants who recover or receive any distribution from the Trust and Claims relating to reporting obligations.

(55)    "Medicare Eligible" means a Survivor Claimant who is eligible to receive, is receiving, or has received Medicare benefits.

(56)    "Medicare Trust Fund" means a U.S. Treasury-held trust fund account from which Medicare is funded or from which Medicare disbursements are paid, including the Hospital Insurance Trust Fund and the Supplementary Medical Insurance (SMI) Trust Fund.

(57)    "MMSEA" means § 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173)", which imposes reporting obligations on those Persons with payment obligations under the MSPA.

(58)    "MSPA" means 42 U.S.C. § 1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

(59)    "Non-Appealable Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and is final and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which, if such an appeal, writ of certiorari, review, reargument, or rehearing has been sought, (i) appeal, certiorari, review, reargument, or rehearing has been denied or dismissed and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; or (ii) such order has been affirmed by the highest court to or in which such order was appealed, reviewed, reargued, or reheard, or that granted certiorari, and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a "Non-Appealable Order."

(60)    "Other Insured Entities" means those Persons listed on Exhibit L that are insured or covered or allegedly insured or covered under a Settling Insurer Policy that was issued or allegedly issued to the Diocese, but only with respect to Survivor Claims based on alleged Abuse that occurred during the effective periods of that Settling Insurer Policy and that would be covered or alleged to be covered under that Settling Insurer Policy but for an Insurance Settlement Agreement. Notwithstanding the foregoing, "Other Insured Entities" does not include the Diocese or the Parishes. An individual who perpetrated an act of Abuse that forms the basis of a Survivor Claim is not an Other Insured Entity. No religious order, archdiocese, or diocese, other than the Diocese itself, is an Other Insured Entity.

(61)    "Other Insurer" means any insurer that is not a Settling Insurer but is a party to the Insurance Coverage Adversary Proceeding or has, or is alleged to have, extended insurance coverage for Survivor Claims.

(62)    "Parish" means all past and present parishes or Catholic schools within the Diocese, including but not limited to those identified on <u>Exhibit A</u>.

(63)    "Person" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof and any other individual or entity within the definition of (i) "person" in Section 101(41) of the Bankruptcy Code; or (ii) "entity" in Section 101(15) of the Bankruptcy Code.

(64)    "Plan" means this Second Amended Joint Chapter 11 Plan of Reorganization as revised or modified or amended.

(65)    "Plan Proponents" means the Diocese and the UCC.

(66)    "Post-Effective Date Unknown Claim Reserve" means the reserve established by the Trust and funded by the Trust and the Diocese pursuant to Section 5.2 of the Plan.

(67)    "Post-Effective Date Unknown Survivor Claim" means any Survivor Claim that was neither filed, nor deemed filed by the Effective Date, and is held by (i) an individual who was at the time of the Filing Date under a disability recognized by Minn. Stat. § 541.15, subd. 1, 2 and 3 (or other applicable law suspending the running of the limitation period, if any, other than Minn. Stat. § 541.15, subd. 4); (ii) an individual who experienced Abuse prior to and including the Effective Date and whose Claim is timely under Minn. Stat. § 541.073, subd. 2 as amended in 2013; or (iii) an individual who has a Survivor Claim that was barred by the statute of limitations as of the Effective Date but is no longer barred by the applicable statute of limitations for any reason as of the Effective Date, including the enactment of legislation that revises previously time-barred Survivor Claims.

(68)    "Pre-Effective Date Unknown Claim Reserve" means the reserve established by the Trust and funded by the Trust and the Diocese pursuant to Section 5.3 of the Plan.

(69)    "Pre-Effective Date Unknown Survivor Claim" means any Survivor Claim for which a Proof of Claim was filed prior to the Effective Date, but such Proof of Claim was neither filed nor deemed filed by the Claim Filing Deadline, and is held by (i) an individual who was at the time of the Filing Date under a disability recognized by Minn. Stat. § 541.15, subd. 1, 2 and 3 (or other applicable law suspending the running of the limitation period, if any, other than Minn. Stat. § 541.15, subd. 4); (ii) an individual who experienced Abuse prior to and including the Effective Date and whose Claim is timely under Minn. Stat. § 541.073, subd. 2 as amended in 2013; or (iii) an individual who has a Survivor Claim that was barred by the statute of limitations as of the Effective Date but is no longer barred by the applicable statute of limitations for any

reason as of the Effective Date, including the enactment of legislation that revises previously time-barred Survivor Claims.

(70)    "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to Bankruptcy Code Section 507(a)(8).

(71)    "Pro Rata" means, with respect to any distribution on account of any allowed Claim in any class, the ratio of the amount of such allowed Claim to the sum of (i) all allowed Claims in such class and (ii) the aggregate maximum of all allowed Claims in such class.

(72)    "Proof of Claim" means a proof of Claim filed in the Chapter 11 Case pursuant to Bankruptcy Code Section 501 and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

(73)    "Protected Parties" means any of (i) the Diocese; (ii) the Parishes; (iii) Other Insured Entities (as set forth in the definition of "Other Insured Entities," "Other Insured Entities" are Protected Parties only as to certain Claims, including only certain Survivor Claims); (iv) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; (v) each of the foregoing Persons' respective predecessors, successors and assigns; and (vi) solely to the extent of and in their capacity as such, any and all the foregoing Persons' respective past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or Persons bound by monastic vows, volunteers, agents, attorneys, and representatives, in their capacity as such. Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Diocese or subject to its control. An individual who perpetrated an act of Abuse that forms the basis of a Survivor Claim is not a Protected Party. No religious order, archdiocese, or diocese, other than the Diocese itself, is a Protected Party.

(74)    "Record Date" means the last date on which a Claim transfer will be recognized. The Record Date is the Confirmation Date.

(75)    "Related Insurance Claim" means (i) any Claim by any Person against any Settling Insurer, including an Extra-Contractual Claim, that, directly or indirectly, arises from, relates to, or is in connection with a Survivor Claim, including any such Claim for defense, indemnity, contribution, subrogation, or similar relief or any direct action or Claim, including an action or Claim under Minn. Stat. § 60A.08, subd. 8, and (ii) any Extra-Contractual Claim that, directly or indirectly, arises out of, relates to, or is in connection with any Survivor Claim, including any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Settling Insurers' handling of, or alleged failure to handle, any Survivor Claim

(76)    "Reorganized Debtor" means the Diocese, from and after the Effective Date. Unless otherwise expressly stated or the context otherwise requires, references to "the Diocese" and "the Reorganized Debtor" throughout various provisions of the Plan are an effort to anticipate whether an event may occur before or after the Effective Date. In this regard, and generally for purposes of the Plan, any written agreement made by the Diocese as part of the Plan before the Effective Date (unless provided otherwise) will survive the Confirmation Date

and the Effective Date and will bind the Reorganized Debtor and every other party to such agreement (including, but not limited to, the provisions of the Plan as confirmed).

(77)    "Retained Claims" means the Diocese's Claims, including, but not limited to, all Avoidance Actions, that are not otherwise settled pursuant to the Plan or agreements approved by the Bankruptcy Court on or prior to the Effective Date, any rights or Claims of the Diocese for indemnification, contribution, or fault allocation, and other Claims of the Diocese against any entity on account of any Claims which are or may be asserted against the Diocese. Retained Claims do not include any Claims transferred or assigned to the Trust and expressly exclude any Claims against any entity released by the Diocese under the Plan.

(78)    "Schedules" means the Diocese's schedules of assets and liabilities and the statement of financial affairs on file with the Clerk of the Bankruptcy Court, as amended or modified in accordance with Bankruptcy Rule 1009.

(79)    "Settling Insurer Policies" means any and all of the following issued or allegedly issued by a Settling Insurer: any and all known and unknown contracts, binders, certificates, or policies of insurance, including all of the insurance policies mentioned or referred to in any Insurance Settlement Agreement, in effect on or before the Effective Date that were issued to, allegedly issued to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure, the Diocese, the Parishes, or any of their predecessors in interest, successors, or assigns, and that actually, allegedly, or could potentially afford coverage with respect to any Survivor Claim; provided, however, that if a contract, binder, certificate, or policy of insurance that was not issued to or allegedly issued to the Diocese or the Parishes insures or covers both the Diocese, the Parishes, and any other Person, such contract, binder, certificate, or policy of insurance, as applicable, is a "Settling Insurer Policy" only to the extent it insures or covers the Diocese and Parishes and not to the extent it insures or covers any other Person. With respect to the certificates issued by Catholic Mutual, the "Settling Insurer Policies" means the certificates issued by Catholic Mutual to the Diocese or Parishes to the extent coverages under such certificates are released by the Insurance Settlement Agreement between Catholic Mutual and the Diocese.

(80)    "Settling Insurers" means the Persons listed on <u>Exhibit B</u> whose Insurance Settlement Agreements are approved by Approval Orders that become Non-Appealable Orders. Solely in connection with insurance under any Settling Insurer Policies, Settling Insurers also includes each of their past, present and future parents, subsidiaries, affiliates, divisions, reinsurers, and retrocessionaires; each of the foregoing Persons' respective past, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, including the Persons released pursuant to the respective Insurance Settlement Agreements; each of the foregoing Persons' respective past, present and future directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and Claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

(81)    "Statutory Fees and Court Costs" means court costs and fees payable by the Diocese under 28 U.S.C. § 1930 and United States Trustee fees.

(82)   "Supplemental Settling Insurer Injunction" is the injunction contained in Plan Section 13.8.

(83)   "Survivor Claim" means any Claim against any of the Protected Parties or any of the Settling Insurers that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including: vicarious liability; *respondeat superior*; any tort-based theory; any fraud-based theory, including fraud, fraud in the inducement, misrepresentation, concealment, and unfair practice; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties, any of the Settling Insurers, or any other Person for whom any of the Protected Parties are allegedly responsible, including any such Claim asserted against any of the Protected Parties in connection with the Chapter 11 Case. For the avoidance of doubt, Survivor Claim includes any Known Survivor Claim, Unknown Survivor Claim, and Late-Filed Survivor Claim.

(84)   "Survivor Claimant" means the holder of a Survivor Claim.

(85)   "Survivor Claim Distribution Plan" means the Survivor Claim Distribution Plan attached as Exhibit K.

(86)   "Survivor Claims Reviewer" means the person or entity, including the designee of such person or entity, who will assess Class 1 and Class 2 Claims under the Survivor Claim Distribution Plan.

(87)   "Trust" means the trust created for the benefit of Survivor Claimants in accordance with the Plan, Confirmation Order, and the Trust Agreement.

(88)   "Trust Agreement" or "Trust Documents" shall mean the trust agreement establishing the Trust, as may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

(89)   "Trust Assets" means all property funded to the Trust pursuant to the Plan, the Confirmation Order, the Trust Documents, the Insurance Settlement Agreements, and the Plan Documents.

(90)   "Trustee" means the Person appointed as Trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order, and the Trust Agreement, or any successor appointed in accordance with the terms of the Plan, Confirmation Order, and the Trust Agreement.

(91)   "UCC" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case, as such committee may be constituted from time to time.

(92)   "Unknown Survivor Claim" means Pre-Effective Date Unknown Survivor Claim and Post-Effective Date Unknown Survivor Claim.

-11-

(93)    "Unknown Survivor Claimant" means the holder of an Unknown Survivor Claim.

(94)    "Unsecured Claim" means a Claim that is unsecured, including an Unsecured Priority Claim or General Unsecured Claim.

(95)    "Unsecured Priority Claim" means a Priority Tax Claim, Employee Priority Claim, or Other Priority Claim.

(96)    "U.S. Trustee" means the Office of the United States Trustee for Region 12, which includes the District of Minnesota.

## 1.2    Interpretation

For purposes of the Plan:

(1)    any term that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

(2)    the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" or "include(s), but is not limited to";

(3)    whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

(4)    the rules of construction set forth in Bankruptcy Code Section 102 and in the Bankruptcy Rules shall apply;

(5)    unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

(6)    any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(7)    any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented;

(8)    unless otherwise specified, all references in the Plan to "Articles," "Sections," "Schedules" and "Exhibits" are references to Articles, Sections, Schedules, and Exhibits of or to the Plan;

(9)    the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(10)   captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

(11)   the Plan supersedes all prior drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

### 1.3   Time Periods

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

### 1.4   Exhibits

All Exhibits to the Plan (including any Supplemental Plan Documents) (with the Plan, the "Plan Documents") are hereby incorporated by reference and made part of the Plan as if set forth fully herein. The Exhibits to the Plan include the following:

| | |
|---|---|
| Exhibit A | Parishes |
| Exhibit B | Settling Insurers |
| Exhibit C | [Reserved] |
| Exhibit D | Trust Agreement |
| Exhibit E | Release |
| Exhibit F | [Reserved] |
| Exhibit G | Assumed Agreements and Cure Amount Claims |
| Exhibit H | Officers and Directors of Reorganized Debtor |
| Exhibit I | Insurance Settlement Agreements |
| Exhibit J | Child Protection Protocols |
| Exhibit K | Survivor Claim Distribution Plan |
| Exhibit L | Other Insured Entities |

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the classes of claims against and equity interests in the Diocese and specifies which of those classes are (i) impaired or unimpaired by the Plan and (ii) entitled to vote to accept or reject the Plan in accordance with Bankruptcy Code Section 1126.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Unclassified | Administrative Expense Claims | N/A | No |
| Unclassified | Priority Claims | N/A | No |

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| 1 | Known Survivor Claims | Yes | Yes |
| 2 | Unknown and Late-Filed Survivor Claims | Yes | Yes |
| 3 | General Unsecured Claims | No | No |
| 4 | Parish Claims | Yes | Yes |

## ARTICLE III
## TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS

Certain Allowed Claims that are not classified will be treated as follows:

### 3.1      Allowed Administrative Expense Claims

Except as otherwise provided in this Article, the holder of an Allowed Administrative Expense will receive, in full satisfaction of such Allowed Administrative Expense: (i) payment in full in cash as soon as practicable after the later of: (a) the Effective Date, or (b) the date the Administrative Expense becomes Allowed; or (ii) such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

#### 3.1.1    Professional Fees and Expenses

Professional fees and expenses incurred through the Effective Date and not previously Allowed will be subject to Bankruptcy Court approval after the Effective Date. All holders of professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than thirty (30) days after a notice of the Effective Date is filed. Any such Allowed Claims will be paid from retainers or by the Reorganized Debtor in cash within ten (10) days of the later of the Effective Date or the Bankruptcy Court's order on such Claims.

#### 3.1.2    Claims Arising Under Assumed Executory Contracts or Unexpired Leases

The holders of Allowed Cure Amount Claims will receive, in full satisfaction of such Cure Amount Claim: (i) payment of the amount as set forth on Exhibit G in cash, as soon as practicable after the Effective Date; or (ii) such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

### 3.2      Statutory Fees and Court Costs

Statutory Fees and Court Costs will be paid in full in cash by the Reorganized Debtor on the Effective Date or as soon as practicable thereafter or as required under the Office of the United States Trustee's quarterly payment guidelines. After confirmation, the Reorganized Debtor will continue to pay quarterly fees to the Office of the United States Trustee and file quarterly reports with the Office of the United States Trustee until this case is closed by the Bankruptcy Court, dismissed, or converted. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11

cases. In the event the Trustee opposes the closure of the Chapter 11 Case, the Trust will be responsible for the payment of all Statutory Fees and Court Costs from the date of the filing of any such opposition through the closure of the Chapter 11 Case. The Trust will be responsible for the payment of Statutory Fees and Court Costs should the Trustee reopen the Chapter 11 Case in the future. In the event that the Trust fails to pay any applicable Statutory Fees or Court Costs, the Diocese may pay the applicable Statutory Fees and Court Costs and seek reimbursement from the Trust. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

### 3.3    Unsecured Priority Claims

#### 3.3.1    Priority Tax Claims

a.    Payment of Priority Tax Claims

The holder of an Allowed Priority Tax Claim will receive, in full satisfaction of such Allowed Priority Tax Claim: (i) payment in full of the unpaid amount of such Allowed Priority Tax Claim in cash as soon as practicable after the latest of (a) the Effective Date, (b) the date such Allowed Priority Tax Claim becomes Allowed, and (c) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; or (ii) such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

b.    Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section 3.3.1(a), the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty shall be subject to treatment in Class 3 (General Unsecured Claims), if not subordinated to Class 3 claims pursuant to an order of the Bankruptcy Court. The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Diocese, the Reorganized Debtor, or their respective property.

#### 3.3.2    Employee Priority Claims

The holder of an Allowed Employee Priority Claim will receive, in full satisfaction of such Allowed Employee Priority Claim: (i) payment in full of the unpaid amount of such Allowed Employee Priority Claim in cash as soon as practicable after the later of (a) the Effective Date, or (b) the date such Allowed Employee Priority Claim becomes Allowed; or (ii) such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

#### 3.3.3    Other Priority Claims

The holder of an Allowed Claim not specifically treated in this section and entitled to priority under Bankruptcy Code Section 507(a) will receive, in full satisfaction of such Allowed Claim: (i) payment in full in cash as soon as practicable after the later

of: (a) the Effective Date, or (b) the date the Claim becomes Allowed; or (ii) such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

# ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**4.1     Class 1 – Known Survivor Claims**

### 4.1.1   Summary

The Plan creates a Trust to fund payments to Class 1 Claimants entitled to such payments under the Plan, Trust Agreement, and Survivor Claim Distribution Plan. Class 1 Claimants' share of the Trust Assets as provided by the Survivor Claim Distribution Plan is the only amount, if any, Class 1 Claimants will be entitled to receive from the Protected Parties and Settling Insurers. Distribution from the Trust does not preclude Claims or recoveries by Class 1 Claimants against Persons who are not Protected Parties or Settling Insurers for the liability of such Persons not attributable to the causal fault or share of liability of Protected Parties or Settling Insurers under the Settling Insurer Policies. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Class 1 Claim shall not be liable for any Protected Party's share of causal liability or fault, but claims against such party shall not be diminished or otherwise impacted by this Plan, as set forth in greater detail in the following paragraph.

### 4.1.2   Reservation

Except with respect to the Protected Parties and the Settling Insurers, nothing in the Plan is intended to affect, diminish, or impair the rights of any Known Survivor Claimant against any Person named or that could be named as a defendant in a lawsuit based on the Abuse that forms the basis of the Class 1 Claim except that the rights of Class 1 Claimants against third-parties, including joint tortfeasors, does not include the right of Class 1 Claimants to collect or to obtain a reallocation of the share of any judgment initially allocated to a Protected Party to any third-party based on the causal fault or share of liability of Protected Parties. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Class 1 Claim shall not be liable for any Protected Party's share of liability or fault. Under no circumstances will the reservation of such Class 1 Claimant's rights against any other Person impair the Discharge, Channeling Injunctions, or Supplemental Settling Insurer Injunction with respect to any Protected Party, the Reorganized Debtor, or Settling Insurers.

### 4.1.3   Treatment

The Protected Parties' and Settling Insurers' liability for and obligation to pay, if any, Class 1 Claims shall be assigned to and assumed by the Trust. Each Class 1 Claim will be estimated solely for purposes of voting. The Protected Parties and the Settling Insurers shall have no further liability in connection with Class 1 Claims.

#### 4.1.4    Release and Certification

No Class 1 Claimant shall receive any payment on any award unless and until such Class 1 Claimant has executed the Release attached as <u>Exhibit E</u> to this Plan. Notwithstanding the foregoing, nothing in this Article requires any Class 1 Claimant to release any Claim(s) against any joint tortfeasor that is not a Protected Party, and such Claim(s) are reserved. But in no event may a Class 1 Claimant collect on that portion of any judgment or obtain any reallocation of any judgment based on the causal fault or share of liability of any Protected Parties. Any Person that is, or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Class 1 Claim shall be provided by the Trustee with a copy of the executed Release upon reasonable request and provision of an appropriate, executed confidentiality agreement, and shall not be liable for any Protected Parties' share of liability or fault. The release of these Class 1 Claims is pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). The Trust shall be obligated to provide copies of the Class 1 Claimants' releases and certifications to any of the Protected Parties or Settling Insurers upon request.

### 4.2    Class 2 – Unknown Survivor Claims and Late-Filed Survivor Claims

#### 4.2.1    Summary

The Plan creates the Class 2 Reserves administered by the Trust to fund payments to Class 2 Claimants entitled to such payments under the Plan, Trust Agreement, and Survivor Claim Distribution Plan. Class 2 Claimants' share of the Class 2 Reserves as provided by the Survivor Claim Distribution Plan is the only amount, if any, Class 2 Claimants will be entitled to receive from the Protected Parties and Settling Insurers. Distribution from the Class 2 Reserves does not preclude Claims or recoveries by Class 2 Claimants against Persons who are not Protected Parties or Settling Insurers for the liability of such Persons not attributable to the causal fault or share of liability of Protected Parties or Settling Insurers under the Settling Insurer Policies. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Class 2 Claim shall not be liable for any Protected Party's share of causal liability or fault, but claims against such party shall not be diminished or otherwise impacted by this Plan, as set forth in greater detail in the following paragraph.

#### 4.2.2    Reservation

Except with respect to the Protected Parties and the Settling Insurers, nothing in the Plan is intended to affect, diminish, or impair the rights of any Class 2 Claimant against any Person named or that could be named as a defendant in a lawsuit based on the Abuse that forms the basis of the Class 2 Claim, except that the rights of Class 2 Claimants against third-parties, including joint tortfeasors, does not include the right of Class 2 Claimants to collect or to obtain a reallocation of the share of any judgment initially allocated to a Protected Party to any third-party based on the causal fault or share of liability of Protected Parties.  Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a

Class 2 Claim shall not be liable for any Protected Party's share of liability or fault. Under no circumstances will the reservation of such Class 2 Claimant's rights against any other Person impair the Discharge Injunction, Channeling Injunction, or Supplemental Settling Insurer Injunction with respect to any Protected Party, the Reorganized Debtor, or Settling Insurers.

### 4.2.3   Treatment

The Protected Parties' and Settling Insurers' liability for and obligation to pay, if any, Class 2 Claims shall be assigned to and assumed by the Trust. The Protected Parties and the Settling Insurers shall have no further or other liability in connection with Class 2 Claims.

### 4.2.4   Determination of Class 2 Claims

Class 2 Claims will be solely determined by the Survivor Claims Reviewer in accordance with the Survivor Claims Distribution Plan. Class 2 Claimants shall provide sufficient information to allow the Survivor Claims Reviewer to make an evaluation of the Class 2 Claim pursuant to the factors in the Survivor Claims Distribution Plan.

### 4.2.5   Release and Certification

No Class 2 Claimant shall receive any payment on any award unless and until such Class 2 Claimant has executed the Release attached as Exhibit E to this Plan. Notwithstanding the foregoing, nothing in this Article requires any Class 2 Claimant to release any Claim(s) against any joint tortfeasor who is not a Protected Party (excluding the Reorganized Debtor) or a Settling Insurer Entity and such Claim(s) are reserved. But in no event may a Class 2 Claimant collect on that portion of any judgment or obtain reallocation of any judgment based on the causal fault or share of liability of any Protected Party. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Class 2 Claim shall be provided by the Trustee with a copy of the executed Release upon reasonable request and provision of an appropriate, executed confidentiality agreement and shall not be liable for any Protected Parties' share of liability or fault. The release of these Class 2 Claims against Protected Parties (excluding the Reorganized Debtor) and Settling Insurers is pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963), and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). The Trust shall be obligated to provide copies of the Class 2 Claimants' releases and certifications to any of the Protected Parties or Settling Insurers upon request.

## 4.3   Class 3 – General Unsecured Claims

The holder of an Allowed General Unsecured Claim will receive, in full satisfaction of such Allowed General Unsecured Claim: (i) payment in full of such Allowed General Unsecured Claim on the Effective Date or as soon as practicable thereafter; or (ii) such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court. There will be no interest or penalties payable on any General Unsecured Claim.

### 4.4     Class 4 – Parish Claims

#### 4.4.1   Definition

Class 4 consists of every Claim held by a Parish as of the Petition Date, including but not limited to Claims based upon (i) reimbursement for overpayments to the self-insurance fund maintained by the Diocese, (ii) reimbursement for overpayments to the group insurance fund maintained by the Diocese, (iii) indemnification and contribution relating to Abuse Claims, (iv) coverage under a Settling Insurer Policy, (v) the Diocese's use of donations received as part of its annual appeal for donations, and (vi) the Diocese's use of funds held in trust.

#### 4.4.2   Summary

The Diocese has reached a global settlement with the Parishes, which is embodied in the Plan. As one component thereof, and to maximize recovery for Survivor Claimants, the Parishes have agreed to receive no distribution on account of their Class 4 Claims.

#### 4.4.3   Treatment

There will be no distribution to the holders of any Class 4 Claims on account of such Class 4 Claims.

### 4.5     Special Provisions Relating to Creditors' Rights of Setoff

Nothing in this Plan shall expand or enhance a Creditor's right of setoff, which shall be determined as of the Filing Date. Nothing in this Plan is intended, nor shall be interpreted, to approve any Creditor's effectuation of a post-Filing Date set off without the consent of the Diocese unless prior Bankruptcy Court approval has been obtained.

## ARTICLE V
## MEANS OF EXECUTION OF THE PLAN

### 5.1     Trust Funding

The Trust shall be established for the purposes of assuming liability of Protected Parties and Settling Insurers for Channeled Claims and receiving, liquidating, and distributing Trust Assets in accordance with this Plan and the Survivor Claim Distribution Plan. The proposed Trust Agreement is attached hereto as <u>Exhibit D</u>.

#### 5.1.1   Transfers from the Diocese to the Trust

The Diocese will transfer $7,000,000 to the Trust within two business days after the Confirmation Order has become a Non-Appealable Order. The Diocese will transfer all Claims or Causes of Action that the Diocese may hold against any and all Other Insurers, to the extent the Diocese holds any such Claims or Causes of Action.

### 5.1.2   Transfers from Parishes to the Trust

The Parishes will transfer $1,000,000 to the Trust within two business days after the Confirmation Order has become a Non-Appealable Order.

### 5.1.3   Settling Insurer Contributions

Each Settling Insurer will pay its Insurance Settlement Amount to the Trust within the time set forth in each such Insurance Settlement Agreement.

### 5.2   Post-Effective Date Unknown Claim Reserve

The Trust shall establish the Post-Effective Date Unknown Claim Reserve.  The Trust shall contribute $200,000 from the Trust Assets to the Post-Effective Date Unknown Claim Reserve and the Diocese shall separately contribute an additional $200,000 to the Post-Effective Date Unknown Claim Reserve.  For the avoidance of doubt, the Diocese's $200,000 contribution is separate from, and in addition to, the Diocese's contribution to the Trust pursuant to Section 5.1.1 of the Plan. The Trust shall maintain the Post-Effective Date Unknown Claim Reserve until the earlier of (i) the exhaustion of the Post-Effective Date Unknown Claim Reserve or (ii) the occurrence of the fifth (5th) anniversary of the Effective Date.  One-half of any funds that remain in the Post-Effective Date Unknown Claim Reserve on the fifth anniversary of the Effective Date shall be returned to the Reorganized Debtor and the other half of such funds shall be retained by the Trust, with no further restrictions on the Trust's use of such funds except for the general restrictions on use of Trust Assets provided for in the Trust Documents.

### 5.3   Pre-Effective Date Unknown Claim Reserve

The Trust shall establish the Pre-Effective Date Unknown Claim Reserve.  After the Survivor Claims Reviewer determines that there are one or more valid Pre-Effective Date Unknown Claims, the Trust shall contribute $250,000 from the Trust Assets to the Pre-Effective Date Unknown Claim Reserve and the Diocese shall separately contribute an additional $250,000 to the Pre-Effective Date Unknown Survivor Claim Reserve.  For the avoidance of doubt, the Diocese's $250,000 contribution is separate from, and in addition to, the Diocese's contribution to the Trust pursuant to Section 5.1.1 of the Plan.  The Pre-Effective Date Unknown Claim Reserve shall be administered as provided in the Trust Agreement and Survivor Claim Distribution Plan. The Trust shall maintain the Pre-Effective Date Unknown Claim Reserve until the payment of all allowed Pre-Effective Date Unknown Survivor Claims.  One-half of any funds that remain in the Pre-Effective Date Unknown Claim Reserve shall be returned to the Reorganized Debtor within 30 days of the completion of payments to holders of all allowed Pre-Effective Date Unknown Survivor Claims.  The remaining half of such funds shall be retained by the Trust, with no further restrictions on the Trust's use of such funds except for the general restrictions on use of Trust Assets provided for in the Trust Documents.

### 5.4   Late-Filed Claim Reserve

The Trust shall establish the Late-Filed Claim Reserve.  The Trust shall contribute $20,000 from the Trust Assets to the Late-Filed Claim Reserve and the Diocese shall separately contribute an additional $20,000 to the Late-Filed Claim Reserve.  For the avoidance of doubt,

the Diocese's $20,000 contribution is separate from, and in addition to, the Diocese's contribution to the Trust pursuant to Section 5.1.1 of the Plan. The Late-Filed Claim Reserve shall be administered as provided in the Trust Agreement and Survivor Claim Distribution Plan. The Trust shall maintain the Late-Filed Claim Reserve until the earlier of (i) the exhaustion of the Late-Filed Claim Reserve or (ii) the occurrence of the fifth (5th) anniversary of the Effective Date. One-half of any funds that remain in the Late-Filed Claim Reserve on the fifth anniversary of the Effective Date shall be returned to the Reorganized Debtor and the other half of such funds shall be retained by the Trust, with no further restrictions on the Trust's use of such funds except for the general restrictions on use of Trust Assets provided for in the Trust Documents.

### 5.5    Vesting

On the Effective Date, all Trust Assets shall vest in the Trust, and the Diocese and other Protected Parties shall be deemed for all purposes to have transferred all Interests in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor or any other Protected Party, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of control of Trust Assets in accordance with this paragraph, the Diocese and other Protected Parties shall have no further Interest in or with respect to the Trust Assets, except as to the Reorganized Debtor's remainder Interest in the Class 2 Reserves, to the extent there are such remaining funds as detailed in Sections 5.2, 5.3, and 5.4 of the Plan.

## ARTICLE VI
## TRUST

### 6.1    Establishment of Trust

On or before the Confirmation Date, the Trust shall be established in accordance with the Trust Documents. The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Diocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

### 6.2    Tax Matters

The Trust shall not be deemed to be the same legal entity as the Diocese or the Reorganized Debtor, but only the assignee of certain assets of the Diocese and a representative of the Estate for delineated purposes within the meaning of Bankruptcy Code Section 1123(b)(3). The Trust is expected to be tax exempt. The Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Minnesota law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any.

### 6.3    Appointment of the Trustee

The initial Trustee has been identified in <u>Exhibit D</u>. The Trustee shall commence serving as the Trustee on the Confirmation Date; provided, however, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Diocese and the UCC, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

### 6.4    Rights and Responsibilities of Trustee

As provided for in the Insurance Settlement Agreements, the Trust shall be a third-party beneficiary of the Insurance Settlement Agreements, with the right, power, and authority to take any action required to enforce the Insurance Settlement Agreements. Additionally, the Trust shall have the right, power, and authority to seek enforcement of the Plan, Confirmation Order, or any other Non-Appealable Order entered by the Bankruptcy Court in this Chapter 11 Case that may affect the Trust's ability to administer Trust Assets or otherwise perform its duties pursuant to the Plan. Among other things, the Trustee: (1) shall liquidate and convert to cash the Trust Assets, make timely distributions, and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other agents on behalf of the Trust, at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement. The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action, or proceeding shall be commenced in any forum other than the Bankruptcy Court against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee.

### 6.5    Investment Powers; Permitted Cash Expenditures

All funds held by the Trust shall be invested in cash or short-term highly liquid investments that are readily convertible to known amounts of cash as more particularly described in the Trust Agreement. The Trustee may expend the cash of the Trust in a manner consistent with the terms of the Trust Agreement.

### 6.6    Registry of Beneficial Interests

To evidence the beneficial interest in the Trust of each holder of such an interest, the Trustee shall maintain a registry of beneficiaries.

### 6.7    Non-Transferability of Interests

Any transfer of an interest in the Trust shall not be effective until and unless the Trustee receives written notice of such transfer.

### 6.8    Termination

The Trust shall terminate after its liquidation, administration, and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Trust Agreement. The Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date.

### 6.9    Immunity; Liability; Indemnification

#### 6.9.1    No Liability for Reorganized Debtor or Trustee

Neither the Reorganized Debtor or its respective members, designees, or professionals, nor the Trustee or any duly designated agent or representative of the Trustee, nor their respective employees, shall be liable for the acts or omissions of any other member, designee, agent, or representative of such Trustee, except that the Trustee shall be liable for its specific acts or omissions resulting from such Trustee's misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Trustee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Trustee shall not be under any obligation to consult with its attorneys, accountants, financial advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Trustee unless such determination is based on the Trustee's recklessness, gross negligence, willful misconduct, or fraud.

#### 6.9.2    No Recourse Against Trustee

No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, agent, attorney, accountant, or other professional retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or Trust Agreement whatsoever executed by the Trustee in implementation of this Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

#### 6.9.3    Indemnification by Trust

The Trust shall defend, indemnify, and hold harmless the Trustee, its officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of Minnesota entitled to indemnify and defend its directors, trustees, officers, and

employees against any and all liabilities, expenses, Claims, damages or losses incurred by them in the performance of their duties hereunder.

a. Additionally, the Reorganized Debtor, and each of its respective agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Trust or Trustee or respective agents, with respect to: (i) the assessment or liquidation of any Survivor Claims, (ii) the administration of the Trust and the implementation of the Survivor Claim Distribution Plan, or (iii) any and all activities in connection with the Trust Agreement, shall be indemnified and defended by the Trust, to the fullest extent that a corporation or trust organized under the laws of Minnesota is from time to time entitled to indemnify and defend its officers, directors, trustees, and employees, against reasonable expenses, costs and fees (including attorneys' fees and costs), judgments, awards, amounts paid in settlement and liabilities of all kinds incurred by the Diocese or Reorganized Debtor, and their respective professionals, officers, and directors, in connection with or resulting from such action, suit or proceeding, provided such expenditures have been approved by the Trust in advance such approval not to be unreasonably withheld.

b. Reasonable expenses, costs, and fees (including attorneys' fees and costs) incurred by or on behalf of a Trustee, the Diocese, the Reorganized Debtor, and their respective agents in connection with any action, suit, or proceeding, whether civil, administrative, or arbitrative, from which they are entitled to be indemnified by the Trust, shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such Trustee, the Diocese, the Reorganized Debtor, and their respective agents, to repay such amount in the event that it shall be determined ultimately by Non-Appealable Order that such Trustee, the Diocese, the Reorganized Debtor, and their respective professionals, officers, and directors is not entitled to be indemnified by the Trust.

**6.10   Trust Liability**

On the Effective Date, the Trust shall automatically and without further act or deed assume: (i) all liability, if any, of the Protected Parties and Settling Insurers in respect of Channeled Claims, subject to Section 13.14; and (ii) the responsibility for preserving and managing Trust Assets and distributing Trust Assets.

**ARTICLE VII
SURVIVOR CLAIMS**

**7.1   Assessment**

Each Survivor Claim will be assessed by the Survivor Claims Reviewer in accordance with the Survivor Claim Distribution Plan to determine whether the Survivor Claimant is entitled to a distribution. The Diocese or the Reorganized Debtor shall reasonably cooperate with the Survivor Claims Reviewer and the Trustee as requested by the Survivor Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Survivor Claim Distribution Plan.

## 7.2    Dismissal of Pending Litigation

Within 21 days after Effective Date, all Claims arising out of, or related to, Survivor Claims asserted in any lawsuit against any Protected Party or Settling Insurer, with respect to coverage under the Settling Insurer Policies, currently pending in state court shall be dismissed with prejudice and without fees or costs being recoverable against any Protected Party or by any Protected Party against the Survivor Claimant.

## 7.3    Release

Prior to any Survivor Claimant receiving a payment from the Trust, the Claimant shall sign the Release attached as Exhibit E.

## 7.4    Objections Deemed Withdrawn

Any objection asserted by the Diocese to a Survivor Claim pending as of the Effective Date is deemed withdrawn without prejudice. Whether and the extent to which any Settling Insurer who filed an objection prior to the Effective Date is entitled to have filed such objection and to continue to assert such objection after the Effective Date shall be determined by the Bankruptcy Court in accordance with applicable procedures.

## 7.5    Objections and Litigation after the Effective Date

As of the Effective Date, the Trustee shall have the sole and exclusive right to object to Survivor Claims. The Reorganized Debtor shall have no right to object to any Survivor Claims after the Effective Date.

## 7.6    Claim Withdrawal

A Survivor Claimant may withdraw his or her Survivor Claim at any time on written notice to the Trustee. If withdrawn, (i) the Survivor Claim will be withdrawn with prejudice and may not be reasserted, and such Survivor Claimant shall still be subject to the Discharge, the Channeling Injunctions, and the Supplemental Insurer Injunction as provided by this Plan; and (ii) any reserve maintained by the Trust on account of such Survivor Claim shall revert to the Trust as a Trust Asset for distribution in accordance with the Plan and Survivor Claim Distribution Plan.

## 7.7    Distributions to Survivor Claimants

A Survivor Claimant, who the Survivor Claims Reviewer determines to be entitled to a distribution, will receive a distribution from the Trust in the amount(s) and at the time(s) provided for in the Survivor Claim Distribution Plan. Any payment on a Survivor Claim constitutes payment for damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. For the avoidance of doubt, Survivor Claimants' recovery on their Survivor Claims shall be limited to the distributions they are entitled to, if any, from the Trust under the Survivor Claim Distribution Plan, and they shall not be entitled to collect personally or otherwise any additional amounts whatsoever on their Survivor Claims from any Protected Party or any Protected Party's assets, or from any Settling Insurers or Settling Insurers' assets in respect of the

Protected Party's coverage under any Settling Insurer Policies, even if they are denied a distribution pursuant to the Survivor Claim Distribution Plan. For the avoidance of doubt, the Class 2 Reserves shall be the sole source of payment to Class 2 Claimants on account of Class 2 Claims. Survivor Claimants' recovery on their Class 2 Claims shall be limited to the distributions they are entitled to, if any, under the Survivor Claim Distribution Plan, and they shall not be entitled to collect personally or otherwise any additional amounts whatsoever on their Class 2 Claims from the Trust, any Protected Party, any Protected Party's assets, any Settling Insurers or any Settling Insurers' assets in respect of the Protected Party's coverage under any Settling Insurer Policies, even if they are denied a distribution pursuant to the Survivor Claim Distribution Plan.

### 7.8    Survivor Claims Reviewer

The Trustee shall retain the Survivor Claims Reviewer. Fees payable to the Survivor Claims Reviewer for review of Class 1 Claims shall be paid from the Trust Assets. Fees payable to the Survivor Claims Reviewer for review of Unknown Survivor Claims shall be paid by the Trustee from the Post-Effective Date Unknown Claim Reserve or Pre-Effective Date Unknown Claim Reserve, depending on whether the Unknown Survivor Claim was a Post-Effective Date Unknown Survivor Claim or a Pre-Effective Unknown Survivor Claim.  Fees payable to the Survivor Claims Reviewer for review of Late-Filed Survivor Claims shall be paid by the Trustee from the Late-Filed Claim Reserve.

### 7.9    Medicare Procedures

With respect to all Survivor Claims, the Trust shall maintain sufficient funds to pay any potential reimbursements to Medicare. The Trust shall complete the following "Medicare Procedures" for Survivor Claims: (i) the Trustee shall determine whether each Survivor Claimant with a Date of Injury after December 5, 1980 is Medicare Eligible; (ii) upon request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to allow them to perform their own SSA queries to the extent they wish to do so; (iii) in the event that one or more Survivor Claimants with Dates of Injury after December 5, 1980 is/are identified as Medicare Eligible, the Trust shall complete a query to the CMS for each such Survivor Claimant to determine whether any Conditional Payment has been made to or on behalf of that Survivor Claimant arising from or relating to treatment for Abuse; (iv) if any Conditional Payment has been made to or on behalf of that Survivor Claimant, the Trustee shall, within the time period called for by the MSPA, reimburse the appropriate Medicare Trust Fund for the appropriate amount, and submit the required information for that Survivor Claimant to the appropriate agency of the United States government.

### 7.10    Medicare Claims Indemnity

The Trust shall defend, indemnify, and hold harmless the Protected Parties and the Settling Insurers from any Medicare Claims arising out of or related to a Survivor Claim, and any Claims related to the Trust's obligations under this Plan.

## ARTICLE VIII
## SETTLING INSURERS

**8.1     Insurance Settlement Agreements**

The Insurance Settlement Agreements shall automatically be, and hereby are, incorporated by reference and made part of the Plan as if set forth fully herein. Upon (i) the Confirmation Order becoming a Non-Appealable Order, (ii) the conditions precedent in each Insurance Settlement Agreement being satisfied, and (iii) subject to any termination provisions in an Insurance Settlement Agreement, the Insurance Settlement Agreements shall become fully binding on the Trust, Protected Parties, the Reorganized Debtor, the UCC, Settling Insurers, the Survivor Claimants, parties in interest in the Chapter 11 Case, and any of the foregoing Persons' successors and assigns. The rights of the parties under any Insurance Settlement Agreements shall be determined exclusively under the applicable Insurance Settlement Agreements and those provisions of the applicable Approval Order approving such Insurance Settlement Agreements, and the Confirmation Order. The Insurance Settlement Agreements shall survive the confirmation, effectiveness, and consummation of the Plan.

**8.2     Sale Free and Clear of Interests of Settling Insurer Policies**

To the extent provided in each of the respective Insurance Settlement Agreements and effective on the later of (i) the Effective Date of the Plan or (ii) the payment by the Settling Insurer of the Insurance Settlement Amount due under such agreement, each and every Settling Insurer Policy shall be sold to the issuing Settling Insurer pursuant to Bankruptcy Code Sections 105, 363, and 1123, free and clear of all liens, Claims and Interests of all Protected Parties and Survivor Claimants; provided, however, that the certificates of insurance issued by Catholic Mutual to the Diocese shall not be sold. As set forth in certain of the Insurance Settlement Agreements and the corresponding Approval Orders, each Settling Insurer that is repurchasing any Settling Insurer Policy is a good faith purchaser of such insurance policy within the meaning of Bankruptcy Code Section 363(m), the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to each such Settling Insurer Policy and constitutes reasonably equivalent value, the releases in such Insurance Settlement Agreements and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws, and each such Settling Insurer Policy shall be terminated and be of no further force and effect with the issuing Settling Insurer having fully and completely performed any and all obligations under each such Settling Insurer Policy, including any performance owed to the Diocese and Parishes, and all limits of liability of each such Settling Insurer Policy shall be deemed fully and properly exhausted.

**8.3     Resolution of Claims Involving Settling Insurers**

The Confirmation Order shall provide that within 10 days after payment of the Insurance Settlement Amounts, the Diocese and the Settling Insurers shall effect dismissal with prejudice of their Claims against each other in the Insurance Coverage Adversary Proceeding, with each side to bear its own fees and costs.

### 8.4     The Settling Insurers' Payments

The Settling Insurers will pay to the Trust the sums set forth in their respective Insurance Settlement Agreements within the time set forth in their respective Insurance Settlement Agreements.

### 8.5     Judgment Reduction

#### 8.5.1     Automatic Reduction

In any proceeding, suit, or action to recover or obtain insurance coverage or proceeds for a Survivor Claim from an Other Insurer, the following shall apply: If the Trust, a Protected Party, a Survivor Claimant, or any other Person bound by the Plan obtains a judgment against the Other Insurer, the judgment shall automatically be reduced by the amount, if any, that all Settling Insurers would have been liable to pay such Other Insurer as a result of the Other Insurer's Related Insurance Claim against one or more Settling Insurers. To ensure that such a reduction is accomplished, (i) the Person pursuing the Related Insurance Claim (whether the Trust, the Protected Parties, a Survivor Claimant, or any other Person bound by the Plan) shall inform the Other Insurer of the existence of this judgment reduction provision at the time a Claim is first asserted against the Other Insurer; (ii) the Other Insurer's Related Insurance Claim against a Settling Insurer may be asserted as a defense in any proceeding, suit, or action to obtain insurance coverage or proceeds from that Other Insurer for a Survivor Claim; and (iii) to the extent the Other Insurer's Related Insurance Claim against a Settling Insurer is determined to be valid by the court presiding over such action, the liability of the Other Insurer shall be reduced dollar for dollar by the amount so determined.

#### 8.5.2     Pursuit of Related Insurance Claims

As provided in the Insurance Settlement Agreements, each Settling Insurer agrees that it will not pursue any Related Insurance Claim that it might have against any other Settling Insurer that does not assert a Related Insurance Claim against a corresponding Settling Insurer. Notwithstanding the foregoing, if a Person pursues a Related Insurance Claim against a Settling Insurer, then such Settling Insurer shall be free to assert its Related Insurance Claims against such Person.

#### 8.5.3     Settlements with Other Insurers

In the event that the Reorganized Debtor or the Trust executes a settlement agreement with any Other Insurer after the Effective Date, the Reorganized Debtor and the Trust shall use best efforts to obtain, from such Other Insurer, if any, agreements similar to those contained in this Section.

### 8.6     Further Assurances; Non-Material Modifications

From and after the Effective Date, the Reorganized Debtor and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Article without further order of the Bankruptcy

Court. The Reorganized Debtor and the Settling Insurers may make technical or immaterial alterations, amendments, modifications, waivers, or supplements to the terms of any Insurance Settlement Agreement. A class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under this Section, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

**8.7    Indemnification Obligations**

**a.    From and after the Effective Date, the Trust shall defend, indemnify, and hold harmless the Settling Insurers with respect to any and all Survivor Claims, Related Insurance Claims, and Medicare Claims.**

**b.    The Reorganized Debtor shall defend, indemnify, and hold harmless the Settling Insurers with respect to any Survivor Claims subject to any limitations in the Insurance Settlement Agreements.  The Settling Insurers shall have the right to defend any Claims identified in this Section 8.7 and shall do so in good faith.**

**c.    The indemnification obligations of the Trust and the Reorganized Debtor to the Settling Insurers includes Survivor Claims made by Persons over whom the Diocese or Parishes do not have control, including any other Person who asserts Survivor Claims against or right to coverage under the Settling Insurer Policies. The Settling Insurers shall have the right to defend any Claims identified in this section and shall do so in good faith in the event the Settling Insurer chooses to defend such Claims. The Settling Insurers may undertake the defense of any Claim on receipt of such Claim without affecting such indemnification obligations. The Settling Insurers shall notify the Trust or the Reorganized Debtor, as applicable, as soon as practicable of any Claims identified in this section and of their choice of counsel. The Settling Insurers' defense of any Claims shall have no effect on the obligations of the Trust or the Reorganized Debtor, as applicable, to indemnify the Settling Insurers for such Claims, as set forth in this section. The Trust or Reorganized Debtor, as applicable, is not obligated to indemnify the Settling Insurers for Claims that are or may be made against the Settling Insurers by other insurers. Any obligation of the Trust or Reorganized Debtor, as applicable, to indemnify the Settling Insurer under this section shall not exceed the Settlement Amount set forth in the Settlement Agreement as actually paid by the corresponding Settling Insurer. Subject to the limitations above concerning the maximum amounts the indemnifying party must pay, the Trust or Reorganized Debtor, as applicable, shall reimburse all reasonable attorneys' fees, expenses, costs, and amounts incurred by the Settling Insurers in defending such Claims. In defense of any such Claims, the Settling Insurers may settle or otherwise resolve a Claim consistent with the terms of this Plan and with the prior consent of the indemnifying party, which consent shall not be unreasonably withheld.**

**8.8     Timing**

The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to such Insurance Settlement Agreement, the Plan, the Confirmation Order, the Approval Orders, and the Bankruptcy Code shall only become effective when the Trust receives the Insurance Settlement Amount in full from the corresponding Settling Insurer pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement.

**ARTICLE IX**
**ESTIMATIONS/ASSESSMENTS**

**9.1     Estimations/Assessments are Not Binding**

Estimations of Class 1 Claims for purposes of voting, and the determination of qualification, assignment of points, and payment of distributions of Survivor Claims under the Survivor Claim Distribution Plan:

a.     shall not (i) constitute an admission of liability by any Person with respect to such Claims; (ii) have any res judicata or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Claims; (iv) be used by any third-party as a defense to any alleged joint liability; or (v) otherwise prejudice any rights of the Trust, Protected Parties, Settling Insurers, and Survivor Claimants in all other contexts or fora; and

b.     shall not be deemed to constitute a determination of liability of any Person.

**ARTICLE X**
**DISTRIBUTIONS AND CLAIMS ADMINISTRATION FOR CLAIMS OTHER THAN SURVIVOR CLAIMS**

**10.1     Distributions**

Unless otherwise provided in this Plan, distributions for Claims other than Survivor Claims shall be made by the Reorganized Debtor.

**10.2     Method of Payment**

Except with respect to Survivor Claims, payments under this Plan will be made by check, mailed with first class postage pre-paid, to the holder of each Claim at the address listed on its Proof of Claim as of the Record Date, or if no Proof of Claim has been filed by the date of the hearing on confirmation, to the address listed on the Schedules as of the Record Date. Holders of Claims as of the Record Date may contact the Reorganized Debtor to amend their addresses as follows:

The Diocese of New Ulm
Attention: Thomas Holzer
Catholic Pastoral Center
1421 6th Street North
New Ulm, MN 56073

## 10.3    Reservation of Rights to Object to Claims

Except with respect to Survivor Claims, the Reorganized Debtor shall have and retain any and all objections to any and all Claims and motions or other requests for the payment of Claims, whether Administrative Expense, secured, or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, priority tax Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law, or contract.

## 10.4    Filing of Objections

Except with respect to Survivor Claims or Administrative Expenses, any objections to Claims will be filed within ninety (90) days after the Effective Date (unless such day is not a business day, in which case such deadline will be the next business day thereafter) or at such later date as approved by the Bankruptcy Court upon request from the Reorganized Debtor. Any Claim objections arising solely under 11 U.S.C. § 502(d) are not subject to the 90-day deadline and may be pursued through an adversary proceeding asserting an Avoidance Claim. An objection to a Claim will be deemed properly served on the holder of the Claim if the Reorganized Debtor effects service by any of the following methods: (i) in accordance with Federal Rule of Civil Procedure 4, as made applicable by Bankruptcy Rule 7004; (ii) by first class mail on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail on any counsel that has appeared on the behalf of the claimholder in the Chapter 11 Case.

## 10.5    Procedures for Treating and Resolving Disputed Claims

### 10.5.1   No Distributions Pending Allowance

Notwithstanding any other provision hereof, no payments or distributions will be made with respect to all or any portion of a Disputed Claim, other than a Survivor Claim, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Non-Appealable Order, and the Disputed Claim has become an Allowed Claim.

### 10.5.2   Claim Estimation

Except with respect to Survivor Claims, the Diocese may request estimation or limitation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code Section 502(c); provided, however, that the Bankruptcy Court will determine: (i) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code Section 502(c), and (ii) the timing and procedures for such estimation proceedings, if any. Unless provided otherwise in an order of the Bankruptcy Court, the estimated amount shall constitute the Allowed amount of such Claim or a maximum limitation on such Claim, as the Bankruptcy Court may direct; provided, however, that if the estimate constitutes the maximum limitation on such Claim, the Diocese may

elect to pursue supplemental proceedings to object to the ultimate allowance of such Claim. The foregoing shall not limit the rights granted by Bankruptcy Code Section 502(j).

### 10.5.3  No Distribution if Cause of Action Asserted

Notwithstanding any other provision hereof, no payment or distribution will be made with respect to all or any portion of a Claim or Allowed Claim held by a claimant against whom an Avoidance Claim or Cause of Action is asserted unless and until such Avoidance Claim or Cause of Action has been settled or withdrawn or has been determined by Non-Appealable Order.

### 10.5.4  Payment Upon Allowance and Disallowance of Disputed Claims

At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Reorganized Debtor shall distribute to the holder thereof the distribution(s) to which the holder is then entitled under the Plan. Such distribution, if any, shall be made as soon as practicable after the entry of the Non-Appealable Order allowing the Claim.

### 10.6    Record Date

The Record Date for Claim transfers is the Confirmation Date. Claim transfers will not be recognized after the Confirmation Date. Payment under the Plan will be mailed to the address of the holder of the Claim as of the Record Date until the holder of the Claim as of the Record Date notifies the Reorganized Debtor in writing of a different address.

### 10.7    De Minimis Distributions

The Reorganized Debtor shall not be required to make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed General Unsecured Claim.

### 10.8    Unclaimed Payments

In the event a payment is returned to the Reorganized Debtor unclaimed, with no indication of the payee's forwarding address, the Reorganized Debtor will hold such payment for a period of 90 days from the date of return. If not claimed by the payee by the end of that period, the funds will be retained by the Reorganized Debtor.

### 10.9    Time Bar to Check Payments

Checks issued by the Reorganized Debtor shall be null and void if not negotiated within 90 days from and after the date of issuance. Requests for re-issuance of any check shall be made to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check must be made on or before 120 days after the date of issuance of such check. After 120 days after issuance of a non-negotiated check for which the holder of the Allowed Claim did not request re-issuance, all claims in respect of voided checks shall be Discharged and forever barred.

### 10.10   Setoffs

The Reorganized Debtor may, pursuant to applicable non-bankruptcy law, set off against any distribution(s) to be made pursuant to the Plan, the claims, rights, and Causes of Action of any nature the Diocese may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claims, rights, and Causes of Action that the Diocese holds or may hold against such holder.

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 11.1   Assumption or Rejection of Executory Contracts and Unexpired Leases

Each Assumed Agreement shall be assumed as of the Effective Date, to the extent that each such Assumed Agreement has not already expired, concluded, or terminated under its own terms. All other executory contracts, unexpired leases, or other agreements that are not Assumed Agreements and were not previously assumed or rejected by order of the Bankruptcy Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date. Entry of the Confirmation Order shall constitute, pursuant to Bankruptcy Code Sections 365 and 1123, the approval of the rejection of all such executory contracts and unexpired leases.

### 11.2   Cure of Defaults

Payments of any Cure Amount Claims relating to the Assumed Agreements shall be made pursuant to Plan Section 3.1.2.

### 11.3   Bar Dates for Rejection Damage Claims

To the extent not subject to a claim filing deadline set forth in any prior or subsequent order of the Bankruptcy Court, claims arising out of the rejection of an executory contract or unexpired lease pursuant to Plan Section 11.1 must be filed with the Bankruptcy Court no later than 30 days after the entry of the Confirmation Order and, upon allowance, shall be an Allowed General Unsecured Claim. Any Claims not filed within such applicable time periods shall be forever barred from receiving a distribution from the estate, the Diocese, or the Reorganized Debtor.

## ARTICLE XII
## EFFECTIVENESS OF THE PLAN

### 12.1   Conditions Precedent to the Effective Date

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied:

a.   The Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Order shall be a Non-Appealable Order, and no stay of the Confirmation Order shall then be in effect.

b.      All Insurance Settlement Agreements shall have been duly executed by all parties thereto and filed with the Bankruptcy Court, in each case in form and substance satisfactory to the Diocese, the UCC, and the Settling Insurers.

c.      The Trustee and the Reorganized Debtor shall have executed the Trust Agreement.

d.      All Approval Orders shall have become a Non-Appealable Order.

e.      The payments discussed in Subsections 5.1.1 and 5.1.2 shall have been received by the Trust.

f.      The Plan has not been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with consent of the Diocese.

## 12.2    Notice of Effective Date

The Plan Proponents shall file a notice with the Bankruptcy Court within three (3) days after the occurrence of the Effective Date. Such notice will include all relevant deadlines put into effect by the occurrence of the Effective Date.

## 12.3    Effect of Non-Occurrence of Conditions

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (i) constitute a waiver or release of any Claims by or against the Protected Parties or the Settling Insurers; (ii) prejudice in any manner the rights of the Protected Parties, the Trust, or the Settling Insurers; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Protected Parties or the Settling Insurers in any respect, including but not limited to, in any proceeding or case against the Diocese; or (iv) be admissible in any action, proceeding or case against the Protected Parties or Settling Insurers in any court or other forum.

## ARTICLE XIII
## EFFECTS OF CONFIRMATION

## 13.1    Discharge

Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, the Diocese will be Discharged from, and its liability will be extinguished completely in respect to, any Claim and debt, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or future, that arose before the Confirmation Date, including, without limitation, all Interest, if any, on any such Claims and debts, whether such Interest accrued before or after the Filing Date, and including all Claims and debts of the kind specified in Bankruptcy Code Sections 502(g), 502(h), and 502(i), whether or not a Proof of Claim is filed or is deemed filed under Bankruptcy Code Section 501, such Claim is Allowed under Bankruptcy Code Section 502, or the holder of such Claim has accepted the Plan.

### 13.2    Title to and Vesting of Assets

All property of the Diocese and the estate is dealt with by this Plan; therefore, on the Effective Date, to the full extent allowed by Bankruptcy Code Sections 1141(b) and 1141(c), all property of the Diocese and the estate, including Retained Claims, shall vest in the Reorganized Debtor and such property shall be free and clear of all Interests of creditors and equity security holders, except to the extent the Plan explicitly provides that such Interests are retained. From and after the Effective Date, the Reorganized Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan. The Reorganized Debtor may pursue any Retained Claims at the discretion of the Reorganized Debtor and will retain the proceeds thereof, if any.

### 13.3    Corporate Action

On the Effective Date, all matters provided for herein that would otherwise require approval of the management of the Diocese shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of Minnesota, without any requirement of further action by the management of the Diocese.

### 13.4    Identity of Officers of Reorganized Debtor

In accordance with Bankruptcy Code Section 1129(a)(5), the identities and affiliations of the Persons proposed to serve as the corporate Members of the Reorganized Debtor and the persons proposed to serve as directors and officers of the Reorganized Debtor on and after the Effective Date are set forth on Exhibit H.

### 13.5    Exculpation and Limitation of Liability

**From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party shall be released from, any Claim, Cause of Action, or liability to any other Exculpated Party, to any holder of a Claim, or to any other party in interest, for any act or omission that occurred during and in connection with the Chapter 11 Case or in connection with the preparation and filing of the Chapter 11 Case, the formulation, negotiation, or pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, the formulation and negotiation of an Insurance Settlement Agreement, or the seeking or obtaining of an Approval Order related to an Insurance Settlement Agreement, except for Claims, Causes of Action, or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Non-Appealable Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, the UCC and the Diocese and their respective officers, board and committee members,**

**employees, attorneys, financial advisors, and other Professionals shall be entitled to and granted the benefits of Bankruptcy Code Section 1125(e) and the Channeling Injunction.**

### 13.6    Limitation of Liability

The Protected Parties, the Trust, the Trustee, and professionals employed by the foregoing shall not have any liability to any entity, including any governmental entity or Insurer, on account of payments made to a Survivor Claimant, including any liability under the MSPA.

### 13.7    Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties and Settling Insurers

**In consideration of the undertakings of the Protected Parties and the Settling Insurers under the Plan, their contributions to the Trust, and other consideration, and pursuant to their respective settlements with the Diocese and to further preserve and promote the agreements between and among the Protected Parties and any Settling Insurers, and pursuant to Bankruptcy Code Sections 105 and 363:**

a.    **any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Agreement as the sole and exclusive remedy for all holders of Channeled Claims; and**

b.    **any and all Persons who have held or asserted, hold or assert, or may in the future hold or assert any Channeled Claims are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties or Settling Insurers, including:**

(1)    **commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or the Settling Insurers or against the property of any of the Protected Parties or the Settling Insurers;**

(2)    **enforcing, attaching, collecting or recovering, or seeking to accomplish any of the preceding, by any manner or means, from any of the Protected Parties or the Settling Insurers, or the property of any of the Protected Parties or the Settling Insurers, any judgment, award, decree, or order with respect to any Channeled Claim against any of the Protected Parties or the Settling Insurers;**

(3)    **creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind relating to any Channeled Claim against any of the Protected Parties or the Settling Insurers, or the property of the Protected Parties or the Settling Insurers;**

(4)    **asserting, implementing, or effectuating, any Channeled Claim of any kind against:**

        *A.*      **any obligation due any of the Protected Parties or the Settling Insurers;**

        *B.*      **any of the Protected Parties or the Settling Insurers; or**

        *C.*      **the property of any of the Protected Parties or the Settling Insurers.**

        **(5)**      **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan; and**

        **(6)**      **asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any of the Protected Parties, the Settling Insurers, or the property of the Settling Insurers.**

**The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation. It is intended that the channeling of the Channeled Claims as provided in this section shall inure to the benefit of the Protected Parties and Settling Insurers. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof, the moving party shall be entitled to recover all costs and expenses incurred, including reasonable attorneys' fees, from the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.**

**13.8    Supplemental Settling Insurer Injunction**

**Pursuant to Bankruptcy Code Sections 105(a) and 363 and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including certain Settling Insurers' purchase of the applicable Settling Insurer Policies free and clear of all Interests pursuant to Bankruptcy Code Section 363(f), any and all Persons who have held, now hold, or who may in the future hold any Interests (including all debt holders, all equity holders, all Persons holding a Claim, governmental, tax and regulatory authorities, lenders, trade and other creditors, Survivor Claimants, Other Insurers, perpetrators and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to an Insurance Settlement Agreement) against any of the Protected Parties or the Settling Insurers, which, directly or indirectly, arise from, relate to, or are in connection with any Survivor Claims that are covered or alleged to be covered under the Settling Insurer Policies, or any Related Insurance Claims related to such Survivor Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurers, Settling Insurer Policies, or Protected Parties to the extent such Interests arise from the same injury or damages asserted in connection with a Survivor Claim, including:**

        a.      **commencing or continuing in any manner any action or other proceeding, whether legal, equitable or otherwise, against the Protected Parties or**

the Settling Insurers or the property of the Protected Parties or the Settling Insurers;

b.    enforcing, attaching, collecting, or recovering, or seeking to do any of the preceding, by any manner or means, any judgment, award, decree or order against the Protected Parties or the Settling Insurers or the property of the Protected Parties or the Settling Insurers;

c.    creating, perfecting, or enforcing, or seeking to do any of the preceding, any lien of any kind against the Protected Parties or the Settling Insurers or the property of the Protected Parties or the Settling Insurers;

d.    asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due to the Protected Parties or the Settling Insurers or the property of the Protected Parties or the Settling Insurers; and

e.    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

The foregoing injunctive provisions are an integral part of this Plan and are essential to its implementation.

### 13.9    Protected Parties' Waiver and Consent

In consideration of the releases and Channeling Injunction, the Supplemental Settling Insurer Injunction, and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Protected Parties:

a.    irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims and/or Interests they have or might have now or in the future against the other Protected Parties, the Reorganized Debtor, and the Settling Insurers with respect to any and all Related Insurance Claims, any contribution, subrogation, indemnification, or other similar Claim arising from or relating to Survivor Claims covered or alleged to be covered under the Settling Insurer Policies, and any Settling Insurer Policies; and

b.    consents to the sale of Protected Parties' Claims and/or Interests, if any, in the Settling Insurer Policies in accordance with the Insurance Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan.

### 13.10    Debtor Waiver and Release of Claims

In consideration of any payments to be made by the Settling Insurers and other consideration provided by each Settling Insurer, upon payment by the Settling Insurers of their respective settlement amounts under the corresponding Insurance Settlement Agreements, the Diocese irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests they have or might have now or in the future (i) under the

Settling Insurer Policies to the extent those Settling Insurer Policies are bought back under any Insurance Settlement Agreement and this Plan; (ii) against the Settling Insurers with respect to any Survivor Claim; and (iii) against the other Protected Parties with respect to any Channeled Claim.

### 13.11   Injunctions in Full Force and Effect

All injunctions and/or stays provided for in the Plan, the injunctive provisions of Bankruptcy Code Sections 524 and 1141, and all injunctions or stays protecting any Settling Insurer that has purchased its policies of insurance or certificates of insurance, free and clear of all liens, Claims, and Interests pursuant to Bankruptcy Code Sections 105, 363, and 1123, are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified. The injunctions and releases contained in the Plan shall control notwithstanding any other provision in the Plan or in any Insurance Settlement Agreement.

### 13.12   Injunctions Integral

The foregoing injunctive provisions are an integral part of the Plan and are essential to its implementation. Any and all currently pending court proceedings, the continuation of which would violate Article 13 of the Plan or the releases provided for under the Plan or Insurance Settlement Agreements shall be dismissed with prejudice.

### 13.13   No Bar on Certain Claims.

Notwithstanding the foregoing injunctions and Plan provisions, nothing in this Plan shall be construed to bar either (i) a Claim based on Abuse against a Person who is not a Protected Party or a Settling Insurer or (ii) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing clause (i) under an insurance policy other than the Settling Insurer Policies.

### 13.14   Defense and Indemnity for Covered Non-Survivor Claims

After the Effective Date, the Reorganized Debtor will defend and indemnify any Protected Party with respect to any Covered Non-Survivor Claims, and, if so required by the Insurance Settlement Agreements, will defend and indemnify the Settling Insurers with respect to any Covered Non-Survivor Claims. As to any Claim against the Trust that qualifies as a Covered Non-Survivor Claim, the Reorganized Debtor will also undertake on behalf of the Trust the enforcement of the injunctions set forth in the Plan, will defend the Covered Non-Survivor Claim, and, if judgment is entered on such Claim, will indemnify the Trust for any liability for such Claim. The Reorganized Debtor may not seek insurance coverage for the Claims defended or indemnified under this Section from the Settling Insurers under any Settling Insurer Policy. Nothing in this provision or any other Plan provision is intended to suggest that any Person is entitled to obtain a judgment on a Covered Non-Survivor Claim or other Enjoined Claim, that such judgment would be covered under any Settling Insurer Policy, or that any Person is entitled to seek coverage for such judgment against any Protected Party or Settling Insurer in violation of the Discharge, Channeling Injunction, or Supplemental Settling Insurer Injunction. For the avoidance of doubt, nothing contained in this Section or the Plan is intended to provide, expand,

modify or add coverage for the Diocese or any other Protected Party under any Settling Insurer Policy to cover the Diocese's indemnification of any Covered Non-Survivor Claims.

### 13.15 Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Diocese and Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan. Pursuant to Bankruptcy Code Section 1146(a), the following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, or similar tax: (i) the creation of any mortgage, deed of trust, lien, or other security interest; (ii) the making or assignment of any lease or sublease; or (iii) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to this Plan.

### 13.16 Cancellation of Instruments

On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Diocese, except such instruments that are authorized or issued under this Plan, shall be cancelled and extinguished. The holders of, or parties to, the cancelled notes and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except any rights provided pursuant to this Plan.

### 13.17 Dissolution of the Committee

On the Effective Date, the UCC shall be dissolved, and the members thereof and the professionals retained thereby shall be released and discharged from their respective fiduciary obligations.

### ARTICLE XIV
### RETENTION OF JURISDICTION

### 14.1 By the Bankruptcy Court

Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. Sections 1334 and 157, on and after the Effective Date, the Bankruptcy Court shall retain: (i) original and exclusive jurisdiction over the Chapter 11 Case, (ii) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Case, and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Case and the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

a.     over disputes concerning the ownership of Claims;

b.     over disputes concerning the distribution or retention of assets under the Plan;

c.     over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims;

d.     over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or Trust, or property abandoned or transferred by the Diocese, the Estate, or the Trust;

e.     over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee;

f.     over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets;

g.     the removal of the Trustee and the appointment of a successor Trustee;

h.     over matters relating to the subordination of Claims;

i.     to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

j.     to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order;

k.     to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to this Plan and any Diocesan Insurance Settlement Agreement;

l.     over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith;

m.     over requests for allowance of payment of Claims entitled to priority under Sections 507(a)(2) and 503(b)(9) of the Bankruptcy Code and any objections thereto;

n.     over all applications for compensation under Bankruptcy Code Sections 327, 328, 329, and 330;

o.     over matters concerning state, local, or federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

p.     over conflicts and disputes among the Trust, the Reorganized Debtor, and holders of Claims;

q.     over disputes concerning the existence, nature, or scope of the Discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

r.     to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, the Reorganized Debtor or its property, the Estate or its property, the Trust or its property, Trustee, the Professionals, or the Confirmation Order;

s.     to enter a Final Decree closing the Chapter 11 Case;

t.     to enforce all orders previously entered by the Bankruptcy Court; and

u.     over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan.

## 14.2   By the District Court

Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. Section 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case.

## 14.3   Actions to Collect Amounts Owed Pursuant to the Plan

Notwithstanding anything to the contrary in this Section, the Diocese, the Reorganized Debtor and the Trust may, but are not required to, commence an adversary proceeding to collect amounts owed pursuant to the Plan for any settlements embodied in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with this Plan. Any such action may be commenced by filing a motion in aid of confirmation with the Bankruptcy Court.

## 14.4   Case Closure

The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing the Chapter 11 Case. The Trustee will not take any actions to unreasonably keep the case open. In an action involving the Trust, any costs incurred in reopening the Chapter 11 Case, including any statutory fees will be paid by the Trustee from the Trust Assets in accordance with an order of the Bankruptcy Court.

## ARTICLE XV
## INCORPORATION OF CHILD PROTECTION PROTOCOLS

## 15.1   Child Protection Protocols

The Child Protection Protocols are incorporated into the Plan.

# ARTICLE XVI
## MISCELLANEOUS PROVISIONS

### 16.1   Modification of the Plan

The Plan Proponents may jointly modify the Plan at any time prior to the confirmation hearing in accordance with Bankruptcy Code Section 1127(a). After the Confirmation Date and prior to substantial consummation, the Plan Proponents may jointly modify the Plan in accordance with Bankruptcy Code Section 1127(b) by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement and supplement the Insurance Settlement Agreements, including the provisions in Articles VIII and XIII, may not be severed, waived, amended, deleted, or otherwise modified without the prior written approval of all of the Settling Insurers affected by such severance, waiver, amendment, deletion, or modification.

### 16.2   U.S. Trustee Reports

From the Effective Date until the Chapter 11 Case is closed, the Reorganized Debtor shall, within thirty (30) days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the U.S. Trustee, quarterly reports setting forth all receipts and disbursements as required by the U.S. Trustee guidelines. The Reorganized Debtor will not be required to file monthly operating reports or provide copies of bank account statements.

### 16.3   Severability of Plan Provisions

Except as specifically provided herein, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of the Plan may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents.

### 16.4   Regulated Rates

This Plan affects no rates subject to approval by any governmental regulatory commission.

### 16.5   Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

### 16.6   Governing Law

The rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Minnesota, without giving effect to principles of conflict of laws.

### 16.7    Construction

The section headings contained in this Plan are for reference purposes and shall not affect in any way the meaning or interpretation of the Plan. To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions of the Plan shall govern.

### 16.8    Revocation

The Plan Proponents reserve the right to revoke and withdraw the Plan prior to entry of the Confirmation Order.

### 16.9    Controlling Documents

In the event and to the extent that any provision of the Plan or Trust Agreement is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Agreement (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of this Plan, this Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Agreement, the provisions of the Confirmation Order shall control and take precedence.

### 16.10    Notices

Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by: (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to the Diocese or the Reorganized Debtor:

> The Diocese of New Ulm
> Attn: Thomas J. Holzer
> Catholic Pastoral Center
> 1421 6th Street North
> New Ulm, MN 56073

> with a copy to:

> Fredrikson & Byron, P.A.
> Attn: Steven R. Kinsella
> 200 South Sixth Street, Suite 4000
> Minneapolis, MN 55401

If to the Trust or the Trustee:

DW Harrow & Assoc., LLC
1880 State Highway 309
Kerens, TX 75144

### 16.11   Filing of Additional Documents

At any time before substantial consummation, the Diocese, the Trust, or the Reorganized Debtor, as appropriate, may file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

### 16.12   Direction to a Party

On and after the Effective Date, the Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

### 16.13   Certain Actions

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Diocese under the Plan, including: (i) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (ii) the adoption, execution, and implementation of other matters provided for under the Plan involving the Diocese or organizational structure of the Diocese shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant applicable non-bankruptcy law, without any requirement of further action by the officers of the Diocese.

### 16.14   Plan as Settlement Communication

The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and Causes of Action that are Disputed as to validity or amount (including Survivor Claims and the Insurance Adversary Proceeding), except as otherwise provided above. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or the Disclosure Statement are subject in all respects to Federal Rule of Evidence 408 and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity or invalidity of, any Disputed Claim or Cause of Action. Except as expressly set forth in this Plan, nothing in this Plan is intended to constitute a compromise of Survivor Claims.

**16.15  Other Rights**

Except as expressly set forth in this Plan, nothing in the Plan shall preclude any Person from asserting in any proceeding, or against any award or judgment entered in such proceeding, any and all rights that may be accorded under Minnesota law, or any other applicable statutory or common law, of contribution, indemnity, reduction, credit, or setoff, arising from the settlement and resolution of the Survivor Claims.

**ARTICLE XVII**
**BANKRUPTCY RULE 9019 REQUEST**

Pursuant to Bankruptcy Rule 9019 and through the Plan, the Plan Proponents request approval of all compromises and settlements included in the Plan.

**ARTICLE XVIII**
**CONFIRMATION REQUEST**

The Plan Proponents request confirmation of the Plan under Bankruptcy Code Section 1129 with respect to any impaired class that does not accept the Plan or is deemed to reject the Plan.

[Signature page for Joint Plan of Reorganization]

   IN WITNESS WHEREOF, the undersigned has executed this Second Amended Chapter
11 Plan of Reorganization this 6th day of March, 2020.

                                        THE DIOCESE OF NEW ULM


                                        By: Rev. Msgr. Douglas L. Grams
                                        Its:  Vicar General


/e/ Steven R. Kinsella
James L. Baillie (#0003980)
James C. Brand (#387362)
Steven R. Kinsella (#0392289)
Samuel M. Andre (#0399669)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
jbaillie@fredlaw.com
jbrand@fredlaw.com
skinsella@fredlaw.com
sandre@fredlaw.com

**ATTORNEYS FOR THE DIOCESE
OF NEW ULM**

[Signature page for Joint Plan of Reorganization]

IN WITNESS WHEREOF, the undersigned has executed this Second Amended Chapter 11 Plan of Reorganization this 6th day of March, 2020.

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS


*/e/ Bruce Doney*
By: Bruce Doney
Its: Chairperson


*/e/ Robert T. Kugler*
Robert T. Kugler (#194116)
Edwin H. Caldie (#388930)
Brittany Michael (#397592)
**STINSON, LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
robert.kugler@stinson.com
ed.caldie@stinson.com
brittany.michael@stinson.com

Telephone: 612-335-1500
Facsimile: 612-335-1657

**ATTORNEYS FOR THE
OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR
THE DIOCESE OF NEW ULM**


67511080 v12

[Signature page for Joint Plan of Reorganization]

IN WITNESS WHEREOF, the undersigned has executed this Second Amended Chapter 11 Plan of Reorganization this 6th day of March, 2020.

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By: Bruce Doney
Its: Chairperson


/s/ Robert T. Kugler
Robert T. Kugler (#194116)
Edwin H. Caldie (#388930)
Brittany Michael (#397592)
STINSON, LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
robert.kugler@stinson.com
ed.caldie@stinson.com
brittany.michael@stinson.com

Telephone: 612-335-1500
Facsimile: 612-335-1657

**ATTORNEYS FOR THE
OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR
THE DIOCESE OF NEW ULM**

6752168Dv12